UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

U<small>NITED</small> S<small>TATES OF</small> A<small>MERICA</small>,

   Plaintiff,

v.

M<small>ARTELL</small> W<small>ATKINS</small>,

   Defendant.

            /

Case No. 15-20333

S<small>ENIOR</small> U.S. D<small>ISTRICT</small> J<small>UDGE</small>
A<small>RTHUR</small> J. T<small>ARNOW</small>

**O<small>PINION AND</small> O<small>RDER</small> G<small>RANTING</small> M<small>ARTELL</small> W<small>ATKINS'S</small> M<small>OTION TO</small> M<small>ODIFY</small>
S<small>ENTENCE</small> [74] <small>AND</small> R<small>EDUCING HIS</small> S<small>ENTENCE TO</small> T<small>IME</small>-S<small>ERVED</small>**

  Defendant, Martell Watkins, is serving a ten-year sentence for distribution of heroin in violation of 21 U.S.C. § 841. His is currently incarcerated at Gilmer FCI. He is 34-years old and scheduled for release on November 23, 2021. He has written a letter moving for early release under 18 U.S.C. § 3582(c)(1).

  The Federal Defender Office was appointed to represent Watkins in his petition. The United States filed a response brief, and a hearing was held July 14, 2020. For the reasons articulated on the record and in the opinion below, Watkins's motion will be granted, and his sentence will be reduced to time-served.

**B<small>ACKGROUND</small>**

  Watkins was born in 1986 in Jackson Mississippi. His parents never cohabitated, and when he was young his father was hit by a semi-truck while walking

down the highway under the influence of his drugs. His mother used crack cocaine for most of his childhood, and Watkins reported that he was bullied at school for not having clothes or food. He described his childhood as painful. (PSR ¶¶ 50-51).

Watkins was first charged criminally when he was 15, for retail theft and then unlawful operation of a motor vehicle. He was arrested for several minor offenses during his teenage years, culminating with a conviction for distributing narcotics that carried a 5-30 year sentence. He received 17 misconduct citations in prison (all those listed for non-violent administrative reasons) and was paroled in 2011. (PSR ¶ 45). That was his last criminal case until he was arrested on this case in May of 2015.

At the time of his arrest for the instant offense, Watkins had been engaged to Shannon Moss for two years. He has one child with Ms. Moss, and he had helped Moss raise her other two children, all of whom were in grade school. (PSR ¶ 52). At the time of his sentencing, Watkins was a few credits away from earning his associates degree. (PSR ¶ 59).

Watkins was arrested after he sold narcotics to an undercover officer. Watkins was accompanied by his children at the time, and a subsequent search of his house revealed narcotics and firearms. The children were referred to child protective services. (PSR ¶¶ 11-13). Watkins plead guilty to conspiracy to distribute narcotics and was sentenced to 12-years in prison on February 17, 2017. (ECF No. 59).

The Court received his letter requesting early release and legal assistance on May 28, 2020. (ECF No. 74). It assigned Watkins counsel, ordered briefing, and held a hearing on July 14, 2020.

## ANALYSIS

18 U.S.C. § 3582(c)(1) allows a district court to reduce a prisoner's sentence, once that prisoner has exhausted his administrative remedies, "if extraordinary and compelling reasons warrant such a reduction.

Because Watkins's avenues for relief with the Bureau of Prisons have been exhausted, the Court has three questions to answer. The first is whether extraordinary and compelling reasons warrant a reduction in sentence. The second is whether Porter poses a danger to the community. The third is whether a sentence reduction is consistent with the § 3553(a) factors. *United States v. Amarrah*, No. 17-20464, 2020 WL 2220008, at *4 (E.D. Mich. May 7, 2020).

1. <u>Extraordinary and Compelling Reasons for Release</u>

In order to determine if extraordinary and compelling reasons exist to release Watkins, the Court must determine if a sentence reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). There are extraordinary and compelling reasons for modification where "[t]he defendant is ... suffering from a serious physical or medical condition ... that substantially diminishes the ability to provide self-care

within the environment of a correctional facility and from which he or she is not expected to recover." *United States v. Rahim*, No. 16-20433, 2020 WL 2604857, at *2 (E.D. Mich. May 21, 2020) (quoting U.S.S.G. § 1B1.13 comment n.1(A)(ii))

The statute also calls for release for "other reasons" that create extraordinary and compelling reasons for release in combination with a petitioner's medical reasons. The heightened susceptibility of prison populations to the virus is an additional reason under the Sentencing Commission's Guidelines for the release of medically vulnerable inmates. *Miller v. United States*, No. 16-20222-1, 2020 WL 1814084, at *3 (E.D. Mich. Apr. 9, 2020) (citing U.S.S.G. § 1B1.13 comment n.1(D)). "On March 23, 2020, the Centers for Disease Control and Prevention (CDC) acknowledged that correctional and detention facilities "present[ ] unique challenges for control of COVID-19 transmission among incarcerated/detained persons, staff, and visitors." *United States v. Kennedy*, No. 18-20315, 2020 WL 1493481, at *2 (E.D. Mich. Mar. 27, 2020), *reconsideration denied*, No. 18-20315, 2020 WL 1547878 (E.D. Mich. Apr. 1, 2020).

Here, Watkins has presented evidence that his medical conditions put him at greater risk of COVID-19 and that he is unable to social distance at Gilmer FCI.

Gilmer FCI has had six inmate COVID-19 cases. All six, according to the BOP website, are recovered, however. See Bureau of Prisons, COVID-19, https://www.bop.gov/coronavirus/ accessed on July 14, 2020. Another section of the

same website notes that one positive test result remains. *Id*. Whatever the case, due to the lack of testing, even zero positive test results are not the same as zero cases. *See Rahim*, No. 16-20433, 2020 WL 2604857, at *3 (explaining that the absence of positive test results is not dispositive where the testing is inadequate). Only 110 out of 1,396 inmates have been tested since the pandemic began. Bureau of Prisons, COVID-19, https://www.bop.gov/coronavirus/ accessed on July 14, 2020. Gilmer FCI may also be vulnerable to reintroduction of the virus from inmates transferred into the facility or the preponderance of cases in the public at large. *United States v. Williams*, No. 15-20462, ECF No. 57, PageId.268 (E.D. Mich. July 13, 2020) (detailing an outbreak that occurred at Gilmer because of the BOP's decision to quarantine coronavirus-positive inmates there).

Watkins is 34-years-old and his only pre-existing condition appears to be his latent tuberculosis. Tuberculosis, or "TB" is a bacterial infection caused by *Mycobacterium tuberculosis*. Those with latent TB are infected with *M. tuberculosis*, but they do not have the TB disease, and consequently demonstrate no symptoms and are not contagious. *See* Centers for Disease Control and Prevention, "The Difference Between Latent TB Infection and TB Disease," https://bit.ly/2Vha7EJ, last accessed on July 14, 2020. Those with a TB infection and an immunocompromising condition such as HIV, malnutrition, or diabetes, are more likely to suffer from active TB. *See* World Health Organization, Tuberculosis,

https://www.who.int/news-room/fact-sheets/detail/tuberculosis, last accessed on July 14, 2020.

This may be a particularly dangerous condition to have in a prison, given that COVID-19 also targets the lungs. According to a non-governmental organization that specializes in addressing tuberculosis worldwide, those who recovered from tuberculosis may be at a greater risk of COVID-19. *See* The Union, COVID-19 and lung health: Frequently Asked Questions, https://www.theunion.org/news-centre/covid-19/covid-tb-faqs-version-2. "COVID-19 affects the lungs, and as we know that there is usually some left-over damage in the lungs following TB disease, which may put you at increased risk of developing more severe COVID-19 symptoms." *Id*.

That being said, like so many other questions about the effects and behavior of the novel coronavirus, its comorbidity with tuberculosis, latent or active, is far from understood. A district court in California summarized the findings of a recent study as follows.

> One observational study studied the relationship of tuberculosis and COVID-19 in 36 confirmed COVID-19 patients. It found that "individuals with latent or active TB [Tuberculosis] may be more susceptible to SARS-CoV-2 infection." It also found that "COVID-19 disease progression may be more rapid and severe" in those with latent or active tuberculosis.[51] It identified "tuberculosis history (both of active TB and latent TB) [as] an important risk factor for SARS-CoV-2 infection." The study noted that its findings are limited because it is based on a low number of cases.

*Doe v. Barr*, No. 20-CV-02141-LB, 2020 WL 1820667, at *5 (N.D. Cal. Apr. 12, 2020).

The study cited is a preprint and has yet to be peer-reviewed.[1] *See* Yongyu Liu, Lijun Bi, Yu Chen, Yaguo Wang, Joy Fleming, Yanhong Yu, Ye Gu, Chang Liu, Lichao Fan, Xiaodan Wang, Moxin Cheng, *Active or latent tuberculosis increases susceptibility to COVID-19 and disease severity*; https://www.medrxiv.org/content/10.1101/2020.03.10.20033795v1, last accessed on July 14, 2020.

A district court in this district recently granted early release to an inmate suffering from latent TB.

> [R]egardless of whether latent TB can make a person more susceptible to catching COVID-19, if [petitioner] does catch it, the risks to someone with a co-infection of TB and COVID-19 "are readily apparent," as both are respiratory diseases that affect the lungs. The Court is not willing to take that risk.

*United States v. Atwi*, No. 18-20607, 2020 WL 1910152, at *5 (E.D. Mich. Apr. 20, 2020) (citing Max Bearak and Joanna Slater, "Among the most vulnerable to coronavirus: The tens of millions who carry HIV and tuberculosis," *Washington Post*, https://wapo.st/2xBSNB5).

The Government seeks to distinguish *Atwi* by arguing that Watkins, unlike Atwi, has received treatment for his latent TB. This distinction matters, but it is

---

[1] *See* The Economist, Speeding up Science During the Pandemic, May 9, 2020, https://www.economist.com/leaders/2020/05/09/speeding-up-science-during-the-pandemic (explaining the role of preprints to the rapid pace of COVID-19 research, and the advantages and disadvantages of relying on preprints).

worth noting that the Atwi's motion was granted despite the fact that he was scheduled for treatment. More critically, there is no evidence on the record that the treatment that Watkins received diminished the potential for comorbidity between latent TB and COVID-19. Those with latent TB still may have lingering pulmonary damage from their active infection, and they may still have reason to fear any immunocompromising second infection that could pave the way for their latent TB to become active. As a district court in Texas found, latent tuberculosis "'substantially diminishes' [an inmate's] ability 'to provide self-care'—remaining free of the most severe COVID-19 symptoms—'within the environment of a correctional facility.'" *United States v. Johnson*, No. CR H-96-176, 2020 WL 3618682, at *3 (S.D. Tex. July 2, 2020). A district court in Nebraska ordered early release primarily on the grounds of the petitioner's hypertension but also because of her latent TB diagnosis. *United States v. Burke*, No. 4:17-CR-3089, 2020 WL 3000330, at *2 (D. Neb. June 4, 2020) ("Research has yet to conclusively establish the risks associated with either latent tuberculosis or brain injury, but the known pulmonary comorbidities and symptoms of COVID-19 and increasing evidence of vascular complications make those conditions relevant as well."). Latent TB, along with hypertension, obesity and a history of smoking, has also been grounds for release from immigration detention. *Singh v. Barr*, No. 20-CV-02346-VKD, 2020 WL 1929366, at *10 (N.D. Cal. Apr. 20, 2020); *see also Thierry B. v. Decker*, No.

CV 20-4035(MCA), 2020 WL 3074006, at *17 (D.N.J. June 10, 2020) (denying habeas relief but "acknowledg[ing] Petitioner's vulnerabilities to complications from COVID-19 in light of his latent T.B., severe psoriasis, and anxiety.")

District courts have not all found that latent TB is cause for early release. *United States v. Rodriguez*, No. CR 17-618, 2020 WL 3447777, at *4 (E.D. Penn. June 24, 2020); *United States v. Sattar*, No. 02-CR-395, 2020 WL 3264163, at *3 (S.D.N.Y. June 17, 2020). Given the scientific community's uncertain and evolving understanding of the interplay between COVID-19 and other pulmonary illnesses, the Court will follow the example of *Doe, Atwi* and *Johnson*, and to a lesser extent *Thierry B*, *Burke* and *Singh*, instead of that of *Rodriguez* and *Sattar*. The minimal risks to society of releasing Watkins are dwarfed by the risks the coronavirus poses to him if he remains in custody.

2. Danger to the Community

The Sentencing Commission's Guidelines require that an individual granted early release under 18 U.S.C. § 3582 "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. 1B1.13. The Court found on the record at the July 14, 2020 hearing that Watkins was no longer a danger to others. He convincingly testified about his new-found spirituality and the lessons he learned from his incarceration. Though he has been violent in the past, that stage of his life appears to be behind him. Watkins is in many ways a success

story for the BOP. He has served as a chapel orderly and a suicide cadre for at-risk inmates. He has participated in bible studies classes and led drug education sessions.

3. Section 3553(a) Factors

A district court contemplating a motion for compassionate release must consider the § 3553(a) sentencing factors. Those are as follows:

> **(a) Factors to be considered in imposing a sentence.**--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> **(2)** the need for the sentence imposed--
> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> **(B)** to afford adequate deterrence to criminal conduct;
> **(C)** to protect the public from further crimes of the defendant; and
> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> **(3)** the kinds of sentences available;
> **(4)** the kinds of sentence and the sentencing range established for--
> **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

18 U.S.C.A. § 3553.

The Court's consideration of these factors is explicated both in this opinion's analysis of U.S.S.G. 1B1.13 and on the record of the July 14, 2020 hearing.

Watkins argues that he has thoroughly and sincerely reformed. He attaches affidavits from several supporters in his life. Shannon Moss, his fiancée, wrote a letter about how Watkins has been an active participant in his daughters' life since

being incarcerated. She states that he has become more patient, understanding, and supportive in his five years in prison, and she asks the Court to release him to reunite their family. (ECF No. 79-7). Watkins's mother wrote a supportive letter as well, indicating that Watkins would like to participate in a youth program at her church to teach kids how not to end up in prison. (ECF No. 79-8). An old friend of Watkins also wrote a letter in his support stating that she is currently managing three rental properties and would like to employ Watkins upon his release. (ECF No. 79-9). Others wrote supportive letters as well. (ECF Nos. 79-10, 79-11).

      The Government focuses on Watkins's history of law-breaking in opposition to his petition. Despite the seriousness of his crimes, however, Watkins has persuasively argued that he is a changed person. He has recognized how tragically he erred by exposing his and Moss's children to the drug trade in his life before incarceration. He spoke compellingly about seeing the long-term danger of drug addiction and mentoring his cell-mate on staying sober. More telling than his words, his behavior during his time in BOP custody convinced the Court that he has been rehabilitated. He is no longer a threat to society, and whatever deterrence value his sentence carried has already accrued in full. There is no legitimate penological justification for keeping him incarcerated any longer.

## CONCLUSION

Accordingly, for the reasons articulated in this order and on the record at the July 13, 2020 hearing,

**IT IS ORDERED** that Watkins's Motion for Early Release [74] is **GRANTED**. His sentence is reduced to time-served.

**IT IS FURTHER ORDERED** that Watkins be **IMMEDIATELY RELEASED** from custody.

**IT IS FURTHER ORDERED** that upon his release from custody, Watkins will begin his 5-year term of **SUPERVISED RELEASE**, as outlined by the February 17, 2017 Judgment (ECF No. 59). Watkins's Conditions of Supervised Release are **MODIFIED** only to provide that he shall fully comply with any applicable state or local stay-at-home orders, social distancing guidelines, or other public health restrictions.

**SO ORDERED**.

                                        s/Arthur J. Tarnow
                                        Arthur J. Tarnow
Dated: July 16, 2020           Senior United States District Judge